UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 04-80117-CIV-HURLEY HOPKINS

STAN FREUND,

    Plaintiff,

v.

HI-TECH SATELLITE, INC.,
JOEL EISENBERG,

    Defendants,
_____/

## MEMORANDUM OPINION CONTAINING FINDINGS OF FACT AND CONCLUSIONS OF LAW

**THIS CAUSE** is before the court upon a stipulation by the parties for a bench trial on the issue of whether plaintiff Stan Freund was an independent contractor and, thus, exempt from overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. In accordance with Rule 52(a) of the Federal Rules of Civil Procedure, and based upon the testimony and evidence presented, the court makes the following:

### FINDINGS OF FACT

**A. Background**

1. Plaintiff Stan Freund is a resident of West Palm Beach, Florida.

2. Defendant Hi-Tech Satellite, Inc. ("Hi-Tech") installs and sells satellite television systems, accessories, and home theater systems. Defendant Joel Eisenberg is a co-owner and general manager of Hi-Tech. See Pl's. Facts at pp. 1-2.

1



3. Hi-Tech's primary source of business consists of installation work obtained from large retailers such as Best Buy and Circuit City. After a customer purchases a satellite or home entertainment system from a large electronics retailer in Palm Beach County, Hi-Tech is contacted by these retailers to install the customers' systems. See Pl's. Facts at p. 2.

4. Mr. Freund installed home satellite and entertainment systems for Hi-Tech from December 20, 2002 through November 25, 2003. See Pl's. Facts at p. 1.

5. Hi-Tech has a corporate policy that "anyone caught collecting money on the side for any services will be terminated immediately." See Pl's. Facts at p. 4. This pertains to a situation where, when a technician arrives at a home, the customer requests that the technician perform services at a lesser price than the price charged by Hi-Tech in exchange for a fee payable directly to the technician. Id. Upon learning that Mr. Freund had performed side work, Hi-Tech ceased providing installation work to Mr. Freund.

6. Mr. Freund presently seeks to recover damages for unpaid overtime hours worked during his tenure as an installer for Hi-Tech.

**B. Nature and Degree of Control that Hi-Tech Exerted Over Mr. Freund**

7. The record evidence and testimony establishes that Hi-Tech's interest in Mr. Freund's work was concerned primarily with the end result of customer satisfaction and not with the day-to-day regulation of Mr. Freund's work-habits, hours-worked, or work methods.

8. Mr. Freund solely determined the hours he spent at work and his routes to work. Although Hi-Tec performed the initial scheduling of appointments for its installers, Mr. Freund was at liberty to re-schedule any of his appointments with customers. See Def's. Facts at ¶ 13. Moreover, Mr. Freund was free to schedule as many work days and off-days as he desired. Id.

9. Additionally, the specific details regarding how Mr. Freund was to perform his installations were left exclusively to Mr. Freund. The only limitations on Mr. Freund's conduct were that: 1) he was not allowed to perform any additional services that were not paid for by customers without Hi-Tech's approval; 2) he was required to wear a shirt with the Hi-Tech logo during installations in order to inform customers that he was not a stranger arriving at the customer's house for improper purposes; 3) he was required to follow certain minimum specifications as to installation standards; and 4) he was required to call the Hi-Tech office to confirm that each installation had been completed without incident and/or to inform Hi-Tech of any problems that occurred on-site during the installation. See Pl's. Facts at pp. 4-5.

10. Finally, Mr. Freund was free to perform installations for other companies and could have established his own sub-contracting corporation had he so chosen. The record evidence establishes that Hi-Tech pays several of its installers through their installers' corporate entities. See Def's. Facts at ¶ 14.

### C. Mr. Freund's Opportunity for Profit or Loss Depending upon his Managerial Skill

11. The record evidence and testimony establishes that Mr. Freund's relationship with Hi-Tech provided him with significant opportunity for profit or loss depending upon his managerial skill.

12. Mr. Freund was almost entirely compensated by the job and not by the hour. Accordingly, if Mr. Freund was able to perform installations more efficiently than his colleagues, he could receive greater compensation than other similarly situated installers. See Def's Facts at ¶ 22.

13. Mr. Freund also had complete authority to hire and fire employees to assist him with installations. Mr. Freund, therefore, had the ability to establish an installation framework that enabled him to handle more installations than his colleagues and, thus, increase his profits so long as he was wise in selecting sub-installers. See Def's Facts at ¶ 15.

14. Mr. Freund was also free to perform installations for other companies. Thus, Mr. Freund had the ability to increase his profitability by performing work for other companies in addition to Hi-Tech. See Def's Facts at ¶ 14.

### D. Mr. Freund's Investment in Equipment or Materials Required for His Occupational Tasks and His Employment of Helpers

15. The record evidence and testimony establishes that all of the necessary equipment for performing installations was procured solely by Mr. Freund and was not provided to him by Hi-Tech.

16. First, Mr. Freund drove his own vehicle, a GMC Safari, from one job-site to another. See Def's Facts at ¶ 18.

17. Second, Mr. Freund was also required to procure his own tools and supplies prior to performing installations for Hi-Tech. See Def's Facts at ¶ 18.

18. Finally, although the evidence establishes that Mr. Freund did not personally hire sub-installers, many installers employed by Hi-Tech employed sub-installers. Accordingly, nothing prevented Mr. Freund from also choosing to hire sub-installers to increase his rate of performance of installations.

### E. Mr. Freund's Skill Level

19. The record evidence and testimony establishes that Mr. Freund's work required the application of special skills to properly install home satellite and entertainment systems.

20. Mr. Freund's job required the ability to competently connect cable and wiring for home satellite and entertainment systems through his customers' ceilings, walls, and home furnishings in a manner that satisfied each customer's individual specifications.

21. Mr. Freund was also required to effectively explain the inner workings of satellite and/or home entertainments systems to the customers and was required to troubleshoot any installation difficulties on-site.

### F. The Degree of Permanence of Mr. Freund's Working Relationship with Hi-Tech

22. The record evidence and testimony establishes that Mr. Freund's working relationship with Hi-Tech was not a relationship with a significant degree of permanence.

23. Mr. Freund had the ability to take installation jobs from companies other than Hi-Tech. See Def's Facts at ¶ 14.

24. Mr. Freund had the ability to accept as many or few installation jobs as he desired. If Mr. Freund chose to work only two days per week, he was allowed to do so by Hi-Tech.

### G. The Relationship Between The Services Rendered by Mr. Freund and Hi-Tech's Business

25. The record evidence and testimony establishes that Mr. Freund's installation work was an integral part of Hi-Tech's business.

26. Hi-Tech derives a significant portion of its revenues from the installations performed by installers such as Mr. Freund. See Pl's. Facts at p. 2.

Based on the foregoing findings of fact, the court reaches the following:

### CONCLUSIONS OF LAW

1. This court must determine whether Mr. Freund was an employee or an independent contractor for Hi-Tech.

2. A determination of employment status under the FLSA is a question of law. See Antenor v. D&S Farms, 88 F.3d 925, 929 (11th Cir. 1996).

3. In order to determine whether Mr. Freund was an employee or an independent contractor of Hi-Tech, courts look to "the economic realities of the relationship." Baker v. Flint Engineering & Construction Co., 137 F.3d 1436, 1440 (10th Cir. 1998). "The focal point is whether the individual is economically dependent on the

business to which he renders service or is, as a matter of economic fact, in business for himself." Id.

4. In applying the "economic realities" test, appellate courts have identified several factors that are useful in distinguishing employees from independent contractors. These factors include: 1) the nature and degree of control of the workers by the alleged employer; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree and permanence of the working relationship; and 6) whether the service rendered is an integral part of the alleged employer's business. See Real v. Driscoll Strawberry Assocs., Inc., 603 F.2d 748, 754 (9th Cir. 1979); see also Baker, 137 F.3d at 1440.

5. Courts have also recognized that "[n]one of the[se] factors alone is dispositive; instead, the court must employ a totality-of-the-circumstances approach." Id.

6. Five of the six factors cited above overwhelmingly support the defendant's conclusion that Mr. Freund was an independent contractor.

7. Even though the installation work performed by Mr. Freund was undisputedly an integral part of Hi-Tech's business, the record evidence and testimony conclusively establish that: 1) Hi-Tec's interest in Mr. Freund's work was concerned primarily with the end result of customer satisfaction and not with the day-to-day regulation of Mr. Freund's work-habits, hours-worked, or work methods; 2) Mr. Freund's relationship with Hi-Tech provided him with a significant opportunity for profit or

loss depending upon his managerial skill; 3) all of the necessary equipment for performing installations was procured solely by Mr. Freund and was not provided to him by Hi-Tech; 4) Mr. Freund's work required the application of special skills to properly install home satellite and entertainment systems; and 5) Mr. Freund's working relationship with Hi-Tech was not a relationship with a significant degree of permanence.

8. Accordingly, for the reasons stated above, the court holds, as a matter of law, that plaintiff Stan Freund was an independent contractor and not an employee of defendant Hi-Tech Satellite, Inc. Therefore, Mr. Freund's claims for overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., fail as a matter of law.

## DECRETAL PROVISIONS

Accordingly, for the reasons stated herein, it is hereby **ORDERED** and **ADJUDGED**:

1. Plaintiff Stan Freund's claim for overtime compensation against defendant Hi-Tech Satellite, Inc. (Count I) is **DISMISSED WITH PREJUDICE**.

2. Plaintiff Stan Freund's claim for overtime compensation against defendant Joel Eisenberg (Count II) is **DISMISSED WITH PREJUDICE**.

3. As there are no remaining claims to be determined by this court, plaintiff's entire complaint is **DISMISSED WITH PREJUDICE**.

4. A final judgment shall be issued in a separate order.

Memorandum Opinion Containing Findings of Fact and Conclusions of Law
Freund v. Hi-Tech Satellite, Inc., et al.
Case No: 04-80117-CIV-HURLEY/HOPKINS

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida this ___9th___ day of June, 2005.

Daniel T.K. Hurley
United States District Judge

*Copies provided to counsel of record*