**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 04-80117-CIV-HURLEY/HOPKINS**

STAN FREUND, on behalf of himself
and all others similarly situated,

      Plaintiff,

v.

HI-TECH SATELLITE, INC. and
JOEL EISENBERG,

      Defendants.

_____/

## PLAINTIFF'S MOTION AND MEMORANDUM OF LAW FOR REHEARING AND/OR AMENDMENT OF FINDINGS OF FACT AND CONCLUSIONS OF LAW AND FOR ENTRY OF A NEW JUDGMENT

Plaintiff by his undersigned moves pursuant to Fed.R.Civ.P. 59 for rehearing and/or an amendment to the findings of fact and conclusions of law and the entry of a new judgment in favor of plaintiff and as grounds states:

### SUMMARY OF ARGUMENT

This court overlooked various significant facts which were presented at trial and misapplied the law when analyzing the facts. In Jeanneret v. Aron's Eastcoast Towing, Inc., 2002 WL 32114470 (S.D. Fl. 2002) this court stated "the Eleventh Circuit outlined the economic realities test that specifically looks to the actual economic relationship among the putative employers and the worker-the way the parties conducted themselves in practice".



(emphasis ours) In Jeanneret, plaintiff attempted to establish an employer-employee relationship by directing this court to a written agreement which set forth the duties and obligations of the parties.  However, this court correctly noted numerous times throughout that decision that it would review the actual working relationship between the parties and what the parties actually did in practice.  In the case at bar however, this court incorrectly focused upon defendants assertions as to what Mr. Freund could have done as opposed to the actual working relationship between the parties.  This court misapplied the economic realities test.

## ARGUMENT

Significant facts which weigh towards and employee-employer relationship and which were not discussed by the court in its decision are that it was defendants Joel Eisenberg and Hi-Tech Satellite, Inc. who decided the rates of pay for installers, type of goods bought and sold, set the prices for goods bought and sold by Hi-Tech Satellite and also set the fees charged by Hi-Tech's installers such as Stan Freund.  Plaintiff Stan Freund was not incorporated and wages were paid directly to "Stan Freund", Mr. Freund had no FEI number and did not carry his own workers' compensation insurance.  He made no financial investment in the business, nor did he invest his own money in advertising whereas in one year Hi-Tech spent approximately $163,000 in advertising.  More importantly however, this court accepted various "facts" contained in defendants proposed findings of fact and conclusions of law without analyzing the way the parties conducted themselves in actual practice.

Whether an employment relationship exists under the FLSA must be judged by the "economic reality" of the <u>individual case</u>.  <u>Dependency</u> is the key of the "economic reality" test when analyzing whether an employer-employee relationship exists for purposes of the FLSA.  Courts must look at all of the surrounding circumstances to determine whether the putative employee is economically dependent upon the alleged employer.  <u>Antenor v. D & S Farms</u>, 833 F.3d 925, 929 (11th Cir. 1996); <u>Goldberg v. Whitaker House Co-Op, Inc.</u>, 366 U.S. 28, 33 (1961); <u>Santelices v. Cable Wiring</u>, 147 F.Supp. 2d 1313 (S.D.Fl. 2001).

In <u>Santelices</u>, District Judge Jordan stated:

> Likewise, merely labeling an individual as an employee or an independent contractor is not dispositive.  *See Rutherford Food*, 331 U.S. at 729, 67 S.Ct. 1473 ("Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the work from the protection of the Act.") In other words, <u>courts look to see whether the putative employee depends (or depended) on the alleged employer for his economic livelihood **based upon the partys' actual working relationship**.</u> *Antenor,* 88 F.3d at 937-38. (emphasis ours)

<u>Santelices</u>, 147 F.Supp. 2d at 1319.

This court mistakenly accepted defendants' argument and statements in its proposed findings of fact and conclusions of law as to what Mr. Freund could have done as opposed to examining the parties actually working relationship as it existed for approximately one year while Mr. Freund worked for Hi-Tech Satellite six (6) days a week and averaged ten (10) hours per day.

When discussing control, this court states in paragraph 8 of its findings that "Mr. Freund was free to schedule as many work days and off days as he desired."  However,

this never occurred in practice.  In fact the evidence showed that when Mr. Freund was looking for a job, he was not hired by Hi-Tech Satellite until they had enough work to keep Mr. Freund busy all day long six (6) days a week.  Although Mr. Freund made an initial inquiry about employment when he was down in Florida on vacation from New Jersey, Joel Eisenberg testified that Mr. Freund wasn't hired until they had a sufficient amount of work for him.  Defendants chose what jobs to assign to Mr. Freund and faxed him those jobs the night before.  This continued for approximately one year until Mr. Freund was fired. Defendants bald assertion that he was free to schedule as many work days and off days as he desired does not change that this never occurred during the actual working relationship between the parties.

This court also states that in paragraph 8 that "Mr. Freund solely determined the hours he spent at work and his routes to work."  Mr. Freund didn't determine the hours he spent at work.  Defendants faxed the work orders to Mr. Freund spaced out at three (3) hour intervals with specific times he was to arrive at the consumers homes.  The particular job itself determined how much time Mr. Freund was going to spend at each home.  Some installations were simple, some installations were not.  Sometimes consumers wanted extra work which was not on the invoice.  This would require additional time.  Mr. Freund did not determine that he was only going to work from 9:00 a.m. to 5:00 p.m..  He did not pick and choose his jobs.  Moreover, that Mr. Freund determined "his routes to work" is not a factor that weighs toward an independent contractor status.  Plaintiff has been unable to find even a single case to support that deciding a route to work is a factor to support independent contractor status.  Court employees now have to travel to Fort Lauderdale because the

courthouse in West Palm is closed. Whether they choose to take A1A, Federal Highway, I-95 or the turnpike, does not change that they are employees. Although defendant claimed that Mr. Freund was at liberty to reschedule any of his appointments with consumers, they were unable to point to even a single incident in the entire year of Mr. Freund's employment that he rescheduled any appointment to a different time.

This court states in paragraph 7 that Hi-Tech was "concerned primarily with the end result of customer satisfaction and not with the day-to-day regulation of Mr. Freund's work-habits, hours-worked, or work methods". Hi-Tech made this statement in closing argument and also in its proposed findings of fact and conclusions of law. This court apparently accepted that statement as evidence that Hi-Tech did not exert control over Mr. Freund. However, the evidence established that Hi-Tech obtained most of its work through companies such as Best Buy and Circuit City. Therefore most of Hi-Tech's "customers" were actually customers of Circuit City and Best Buy. The evidence established that when a consumer walks into one of these large retailers and purchases installation along with the satellite hardware, Best Buy or Circuit City will subcontract the work with installation companies such as Hi-Tech Satellite. The customer of Best Buy has no choice as to who performs the actual installation. Rest assured that if Mr. Freund had bad work habits, constantly called the consumer to change the pre-arranged installation time, or performed shoddy workmanship, those consumers would call Best Buy to complain and Best Buy would in turn complain to Hi-Tech Satellite, and if the complaints continued, Hi-Tech would fire Mr. Freund because they did not want to lose the business being supplied to them by

Best Buy.  The bottom line is that customer satisfaction includes good work habits, arriving at the designated hour, and proper work methods.  They are the means to the end.

In paragraph 10 of the order this court states that Mr. Freund was free to perform installations for other companies and could have established his own subcontracting corporation had he so chosen.  This court is mistakenly focusing on defendants after the fact claims as to what Mr. Freund could have done as opposed to what actually occurred in practice between the parties.  It can be said of any true employee that they can perform work for other companies or establish their own corporation if they choose to do so.  However, what could happen or what might happen has no place in the economic realities test.

This court also notes in paragraph 10 that the evidence establishes that Hi-Tech pays several of its installers through those installers' corporate entities.  Although this may be true, this fact should be irrelevant to the court's analysis as to the relationship between Stan Freund and Hi-Tech.  A company can have both employees and independent contractors.  Hi-Tech's other installers may in fact be independent contractors.

Concerning Mr. Freund's opportunity for profit or loss this court states in paragraph 12 that Mr. Freund was almost entirely compensated by the job and not the hour.  Therefore "if Mr. Freund was able to perform installations more efficiently than his colleagues, he could receive greater compensation then other similarly situated installers."

Although workers paid on a per job basis, piece rate or commission have the opportunity to increase their earnings through hard work and initiative, such earnings are not properly characterized as profit.  In Dole v. Snell, 875 F.2d 802, 810 (10th Cir. 1989) the

Page 6 of  10

court noted that "toiling for money on a piece work basis is more like wages than an opportunity for profit." The individuals did not share in the profits of the business. See also Martin v. Selker Bros. Inc., 949 F. 2d 1286, 1293 (3rd Cir. 1991) (the opportunity to increase commissions was not the opportunity for business profit.)

Quality of the product bought and sold, location of the establishment, advertising, the price of products sold and the charges for services rendered, are major factors which determine the amount of profit or loss of business. Here, it is undisputed that Stan Freund did not choose the quality or price of the products bought and sold by Hi-Tech, he did not choose the location of the establishment, he did not advertise or invest any money towards advertising. Thus, since all these things are controlled by Hi-Tech, this factor should weigh toward an employment relationship. Brock v. Mr. W. Fireworks, Inc., 814 F.2d 1042 (5th Cir. 1987).

This court also states in paragraphs 13 and 14 of the decision that Mr. Freund had the complete authority to hire and fire employees to assist him with installations, and was also free to perform installations for other companies. Thus, he had the ability to increase his profitability by working for other companies. Again, what he could have done is not relevant to the determination of whether he was an employee or an independent contractor. There is no evidence that Mr. Freund even had an employee and he never performed installations for other companies. He did not have to because he was kept busy all day long six (6) days a week working for Hi-Tech Satellite.

When considering the investments made by Mr. Freund this court focused on Mr. Freund owning a GMC Safari and providing his own tools. As noted by Mr. Freund in his

trial memorandum, supplying tools is seldom found as a factor weighing towards independent contractor status.  Rutherford Food Corp. v. McComb, 331 US 722 (1947) (meat cutters provided hooks, knives and leather belts).  Shultz v. Mistletoe Express Service, Inc., 434 F. 2d 1267 (10th Cir. 1970)(workers provided trucks).  Moreover an investment is the amount of large capital investments such as risk capital not small items or the labor itself.  Dole v. Snell, 875 F.2d 802, 810 (10th Cir. 1989) and Brock v. Mr. W. Fireworks, Inc., 814 F.2d 1042 (5th Cir. 1987). Additionally the investments made by the worker must be compared to the investments made by the business.  Here, the evidence established that in one year Hi-Tech spent approximately $163,000 in advertising, not including the amount spent on goods purchased for resale.  When this is compared to the costs of Mr. Freund's van and tools the "investment" by Mr. Freund is negligible.

Concerning the degree of permanency of Mr. Freund's work relationship with Hi-Tech this court found that it was not a relationship with a significant degree of permanency.  This court notes in paragraphs 23 and 24 of its decision that Mr. Freund had the ability to take installation jobs from other companies and had the ability to accept as many installations as he desired.  This court stated that if Mr. Freund chose to work only two days per week he was allowed to do so by Hi-Tech.  At that risk of sounding repetitive this court is again mistakenly focusing on what the defendant claims Mr. Freund could have done as opposed to the actual economic relationship among the parties and the way the parties conducted themselves in practice.  In actuality, Mr. Freund did not take installation jobs from other companies, he did not accept as many or few installations as he desired, and he did not choose to work only two days per week.  From day one Mr. Freund was assigned work by

Hi-Tech which kept him busy solely working for Hi-Tech six (6) days a week approximately ten (10) hours per day.  This establishes a significant permanent relationship between Mr. Freund and Hi-Tech.  The same type of permanency as an employee.

Although, this court found Mr. Freund's skill level to be a factor weighing towards an independent contractor relationship, plaintiff submits that Mr. Freund did not exercise any special skills which would weigh heavily in favor of establishing an independent contractor relationship.  This court did find that Mr. Freund's installation work was an integral part of Hi-Tech's business and therefore this factor would weigh towards an employer employee relationship.

The telltale sign that Mr. Freund was an employee is that defendant Eisenberg fired him for performing side work.  Thus Mr. Freund had no opportunity for profit beyond the work he was assigned by Hi-Tech.  The consumer wanted extra-work that was not on the original work order as sent by the retail store to Hi-Tech.  This was a customer of the retail store, not Hi-Tech.  The consumer did not want to pay Hi-Tech's price so Mr. Freund did it for less and kept the money for the extra service.  Mr. Eisenberg testified it was a warranty issue but also admitted that any extra's must be paid to Hi-Tech and not Stan Freund.  A true independent contractor would have been able to use his skills as a salesman, and independent businessman to sell extra items and services and keep all those profits as long as it was reported to Hi-Tech.  This was not the case.

## CONCLUSION

This court failed to consider significant facts which weigh in favor of finding an employer-employee relationship, and misapplied the law when analyzing the facts it did